J-A04038-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE MATTER OF: NANCY S. KEEGAN, AN ALLEGED INCAPACITATED PERSON, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| APPEAL OF: KATHLEEN A. GALLAGHER | |
| | No. 496 WDA 2015 |

Appeal from the Order February 18, 2015
In the Court of Common Pleas of Butler County
Orphans' Court at No(s): O.C. NO. 2015-00005

BEFORE:  FORD ELLIOTT, P.J.E., BENDER, P.J.E., and SHOGAN, J.

MEMORANDUM BY SHOGAN, J.:                    **FILED MAY 10, 2016**

Appellant, Kathleen A. Gallagher, appeals from the order that appointed Appellant and Attorney Dorothy J. Petrancosta ("Attorney Petrancosta") as permanent plenary co-guardians of the person and for the estate of Nancy S. Keegan ("Mother").[1]  We affirm.

---

[1] In addition, Appellant has filed an application to strike the supplemental record submitted *sua sponte* by the trial court.  Instantly, after the filing of this appeal and the transmittal of the certified record to this Court, the trial court held ancillary proceedings unrelated to the appointment of Appellant and Attorney Petrancosta as co-guardians and drafted a supplemental Pa.R.A.P. 1925(a) opinion that buttressed its decision currently on appeal.  Thereafter, the trial court *sua sponte* transmitted a supplemental record to this Court.  The trial court's *sua sponte* action precipitated Appellant's application to strike.

*(Footnote Continued Next Page)*

The trial court summarized the history of this case as follows:

Counsel for the Appellant filed a Petition for the Appointment of Plenary Guardian of the Estate and Person of an Incapacitated Person Under 20 Pa. C.S.A. 5511 Et Seq. (hereinafter "Petition for Guardianship") on or about January 7, 2015, initiating this action. Pursuant to the Preliminary Order of Court under date of January 7, 2015, the Court scheduled a hearing on said Petition for February 17, 2015, at 11:00 o'clock A.M. in Courtroom #3 of the Butler County Government Center.

[Mother] is a widow with five living children[: Appellant], Marian S. Keegan, Terence M. Keegan, Kevin M. Keegan, and Robert F. Keegan. Terence M. Keegan and Robert F. Keegan each filed a Consent of Heir shortly after the Petition for Guardianship was filed by Appellant.

At the time and place set for hearing on the Petition for Guardianship, Appellant appeared along with her counsel, Elizabeth A. Smith, Esquire. Lynn M. Patterson, Esquire, court appointed counsel, appeared on behalf of the adjudicated incapacitated person, [Mother]. Marian S. Keegan and Kevin M. Keegan also appeared to both contest the adjudication of [Mother] as incapacitated, and to protest to the appointment of

*(Footnote Continued)* ───────────────

Pa.R.A.P. 1926 addresses the correction and modification of the certified record. However, Pa.R.A.P. 1926 does not allow for the introduction of new evidence at the appellate level. Rather, Pa.R.A.P. 1926 permits the correction or modification of the existing certified record when "anything material to either party is omitted from the record by error or accident or is misstated therein[.]" "Material" in this sense means evidentiary items that were considered by the trial court but, for some error, were not included in the formal certified record. *Rae v. Pa. Funeral Dir's Ass'n*, 925 A.2d 197, 204 (Pa. Cmwlth. 2007) (*vacated on other grounds*) (citing *Gulentz v. Schanno Transp., Inc.*, 513 A.2d 440 (Pa. Super. 1986)). Here, the items in the supplemental record transmitted *sua sponte* by the trial court were not material to its consideration of the current order on appeal. Accordingly, Pa.R.A.P. 1926 cannot be utilized as a vehicle to introduce these new items. *Rae*, 925 A.2d at 204. Hence, we grant Appellant's application and strike the supplemental record. In reaching our decision in this matter we have not considered any items contained in the supplemental record.

the Appellant as [Mother's] Permanent Plenary Guardian. Dr. Ira S. Handler, M.D., a recognized expert in geriatric psychiatry, testified that, after having met with and examining [Mother], his diagnosis of her was Dementia, Not Otherwise Specified. He further offered that this condition will not improve, but is likely to worsen, and specifically that her ability to consider abstract concepts has decreased even since his treatment of [Mother] began in 2001. Dr. Handler testified that no medication exists to cure [Mother's] Dementia, and that without her late husband to care for her, he believes her to have a difficult time performing daily tasks. It was Dr. Handler's opinion that because [Mother] has simplistic and unrealistic thoughts as well as executive function deficiency, she requires supervision in the least restrictive form of a Permanent Plenary Guardian. Additionally, it was made known to Dr. Handler, and he testified to [Mother] being very upset because of the disagreement amongst her children regarding this Guardianship.

Further testimony in this case revealed a strong discord between three of the siblings. Appellant testified that after her father's death she moved [Mother] to New Haven Residential Assisted Living on December 12, 2014. Appellant further testified that she has handled [Mother's] finances, and has made medical decisions for her mother since the death of her father, Terence J. Keegan [("Father")]. Appellant identified for the Court a Power of Attorney dated November 15, 1996, signed by [Mother], appointing [Father], and alternatively, [Appellant], as [Mother's] Power of Attorney. Appellant further identified a Health Care Declaration and Health Care Power of Attorney dated March 2, 1999, signed by [Mother], appointing only [Father] as her surrogate with no successor. [Father] was identified as [Mother's] late husband. When asked why the proceedings were instituted if Appellant was already vested as [Mother's] Power of Attorney, Appellant explained that she was having difficulty exercising her Power of Attorney due to her brother and sister, Marian S. Keegan and Kevin M. Keegan, having contacted New Haven Residential Assisted Living in an effort to obviate the authority of Appellant to make medical decisions for [Mother]. Lastly, Appellant stated that, in her opinion, a Co-Guardianship with her siblings would not work.

Both Kevin M. Keegan and Marian S. Keegan strongly objected to the appointment of a Guardian, and specifically to the appointment of [Appellant] as the Guardian of [Mother].

Kevin M. Keegan and Marian S. Keegan both stated in open court that they believe Appellant to be exerting control over [Mother]. In so claiming, both siblings used Appellant's move of [Mother] from her condo into New Haven Residential Assisted Living as an example of said control. Marian S. Keegan testified that [Mother] had expressed to Marian an interest in participating in the Meals on Wheels program, and a desire to remain in her condo, both of which, she claimed, Appellant did nothing to facilitate. Marian S. Keegan expressed her shock that [Mother] had been moved out of the condo only two months after the death of [Father]. Marian S. Keegan further stated that she believed Appellant to be "commandeering" [Mother's] assets in an effort to alienate Marian S. Keegan and Kevin M. Keegan from [Mother].

Trial Court Opinion, 4/9/15, at 1-4 (citations omitted).

On February 18, 2015, the trial court entered an order declaring Mother to be an incapacitated person[2] and appointed Appellant and Attorney Petrancosta, an unassociated third party, to act as permanent plenary co-guardians of Mother. This appeal followed. Both Appellant and the trial court have complied with Pa.R.A.P. 1925.

Appellant presents the following issue for our review:

Did the Orphans' Court abuse its discretion when it appointed an attorney as a "third party" Co-Guardian in addition to the Appellant, Kathleen A. Gallagher, daughter of the incapacitated person, where the incapacitated person previously declared in a signed and notarized Power of Attorney that she nominated Appellant as her sole Power of Attorney, where the evidence established Appellant to be trustworthy, where the evidence also

---

[2] The term "incapacitated person" is defined pursuant to 20 Pa.C.S. § 5501 as "an adult whose ability to receive and evaluate information effectively and communicate decisions in any way is impaired to such a significant extent that he is partially or totally unable to manage his financial resources or to meet essential requirements for his physical health and safety."

established that the incapacitated person placed great trust in Appellant, and where the incapacitated person, through her Court appointed attorney, neither sought out nor requested a court appointed "third party" Co-Guardian.

Appellant's Brief at 9.

In her sole issue, Appellant argues that the trial court abused its discretion in appointing Attorney Petrancosta to serve as co-guardian along with Appellant. Appellant's Brief at 15-18. Appellant claims that the trial court did not give substantial weight to Mother's original intent in signing the power of attorney dated November 15, 1996. Appellant contends the trial court abused its discretion by speculating that the appointment of a co-guardian with Appellant would minimize the discord between the siblings. In essence, Appellant asks to be the permanent sole and plenary guardian.

We have long stated that the appointment of a guardian lies within the sound discretion of the trial court. *Estate of Haertsch*, 649 A.2d 719, 720 (Pa. Super. 1994). "Discretion must be exercised on the foundation of reason. An abuse of discretion exists when the trial court has rendered a judgment that is manifestly unreasonable, arbitrary, or capricious, has failed to apply the law, or was motivated by partiality, prejudice, bias, or ill will." *In re Duran*, 769 A.2d 497, 506 (Pa. Super. 2001) (quoting *Harman ex rel. Harman v. Borah*, 756 A.2d 1116, 1123 (Pa. 2000)).

Our Supreme Court has explained that pursuant to the guardianship statute, which is a provision of the Pennsylvania Decedents, Estates and Fiduciaries Code, "[a] guardian is appointed only upon a finding that the

person is partially incapacitated **and** in need of guardianship services, or upon a finding that the person is totally incapacitated **and** in need of plenary guardianship services." ***In re Peery***, 727 A.2d 539, 541 (Pa. 1999) (internal quotations marks and citations omitted) (emphasis in original).

In addition, this Court has stated the following:

> Any person interested in the alleged incapacitated person's welfare may petition the court for a judicial determination that the person is indeed incapacitated and for the appointment of a guardian. However, a person is presumed to be mentally competent, and the burden is on the petitioner to prove incapacity by clear and convincing evidence.

***In re Hyman***, 811 A.2d 605, 607-608 (Pa. Super. 2002) (citations and quotation marks omitted).

To establish incapacity, a petitioner must comply with the requirements set forth in section 5518 of the guardianship statute. In addition, section 5512.1 of the guardianship statute stipulates a list of items for the trial court to consider in making a determination of incapacity.

Following a determination of incapacity, the guardianship statute provides the following statutory authority for a trial court to appoint a guardian for the incapacitated person:

**§ 5511.  Petition and hearing; independent evaluation**

**(a) Resident.--**The court, upon petition and hearing and upon the presentation of clear and convincing evidence, may find a person domiciled in the Commonwealth to be incapacitated and appoint a guardian **or guardians** of his person or estate. The petitioner may be any person interested in the alleged incapacitated person's welfare. . . .

- 6 -

* * *

**(f) Who may be appointed guardian.--**The court may appoint as guardian any qualified individual, a corporate fiduciary, a nonprofit corporation, a guardianship support agency under Subchapter F (relating to guardianship support) or a county agency. . . . **If appropriate**, the court shall give preference to a nominee of the incapacitated person.

20 Pa.C.S. § 5511(a) and (f) (emphases added).

Section 5511 must be read in conjunction with section 5604(c)(2),[3]

which directs the court to give preference to the nominee of the now

incapacitated person. The statute provides, in pertinent part, as follows:

**§ 5604. Durable powers of attorney**

**(a) Definition.--**A durable power of attorney is a power of attorney by which a principal designates another his agent in writing. The authority conferred shall be exercisable notwithstanding the principal's subsequent disability or incapacity. . . .

* * *

**(c) Relation of agent to court-appointed guardian.--**

* * *

(2) A principal may nominate, by a durable power of attorney, the guardian of his estate or of his person **for consideration by the court** if incapacity proceedings for the principal's estate or person are thereafter commenced. The court shall make its appointment in accordance with the principal's most recent nomination in a durable power of attorney **except for good cause or disqualification**.

---

[3] Chapter 56 of Pennsylvania Decedents, Estates and Fiduciaries Code addresses powers of attorney. 20 Pa.C.S. §§ 5601-5611.

20 Pa.C.S. § 5604(a), (c)(2) (emphases added).

Appellant argues that pursuant to our decision in *In re Sylvester*, 598 A.2d 76 (Pa. Super. 1991), Mother's nomination of Appellant as the successor to Father in Mother's durable power of attorney should be given great deference and that Appellant should have been appointed the sole guardian. We disagree.

As we explained in *Sylvester*, generally there is no need to appoint an independent guardian of the person and the estate where the incapacitated person has executed a durable power of attorney to handle his finances. *Sylvester*, 598 at 83-84. In *Sylvester*, an emergency guardian was appointed based on allegations that the attorneys-in-fact had isolated the incapacitated person and misused his funds. At the hearing, despite the lack of proof regarding any wrongdoing by the attorneys-in-fact, the court appointed different guardians. On appeal, this Court reversed, finding that the trial court ignored the dictates of section 5604(c)(2) and we held that, "[i]n the absence of proof of good cause or disqualification based on competent evidence at the guardianship hearing, there was no need to appoint an independent party as permanent guardian." *Id*. at 83-84. However, the facts of the instant case are distinguishable from *Sylvester* in that the trial court did not ignore Mother's election of Appellant as the successor in the durable power of attorney. Here, the trial court appointed Appellant to serve as a co-guardian, along with Attorney Petrancosta.

The trial court offered the following reasoning for its decision to appoint an independent third party to serve as Mother's co-guardian along with Appellant:

> It was apparent to this Court that based on the facts and testimony presented, there continues to be serious disagreement between Appellant and her siblings, Kevin M. Keegan and Marian S. Keegan, regarding the treatment of [Mother]. Testimony indicated that these issues will not be resolved in the near future, but would only increase if Appellant were granted sole and exclusive guardianship authority of [Mother]. Therefore, this Court weighed all facts and testimony presented concerning the assists and supports available to [Mother], and utilized its inherent judicial powers in law and equity to appoint a third-party as Co-Guardian, to serve with Appellant, in an effort to prevent further disagreements relative to [Mother's] care and future financial expenditures on her behalf. Such an appointment is well within this Court's legal and equitable powers to administer justice.

Trial Court Opinion, 4/9/15, at 5.

Based upon our review of the record, we discern no abuse of discretion in the trial court's appointment of co-guardians in this matter. The three siblings herein each offered testimony to the trial court that supported the conclusion there is serious discord among the family members and complete disagreement regarding the well-being and appropriate treatment of Mother. N.T., 2/17/15, at 50, 52, 61, 71-73, 74-87. In addition, it is undisputed that Appellant was listed on the 1996 durable power of attorney as the successor to Father in the event that Father was unable to serve. *Id*. at 31-32. Interestingly though, Appellant was not named as the successor to Father on the 1999 healthcare power of attorney executed by Mother. *Id*. at 37-38.

In addition, Dr. Handler testified that Mother is vulnerable to unscrupulous and designing persons. *Id*. at 12. Appellant's sister, Marian Keegan, testified regarding concerns that Appellant was manipulating Mother and has commandeered Mother's assets. *Id*. at 82-86. The evidence before the trial court was sufficient good cause as to why Appellant's appointment as the sole guardian of either Mother's person or estate was not appropriate.

Accordingly, we conclude that the trial court followed the proper statutory authority when it considered and appointed Appellant, the named successor in Mother's durable power of attorney, as a co-guardian in this matter. Likewise, we conclude that the trial court was acting within its discretion in choosing to appoint Attorney Petrancosta as an independent co-guardian to serve along with Appellant. Thus, because the trial court considered the necessity of an independent co-guardian and articulated a sound evidentiary basis for its decision, we discern no abuse of discretion in the decision of the trial court. *Estate of Haertsch*, 649 A.2d 719.

Order affirmed. Application to strike supplemental record granted.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/10/2016